UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-80685-CIV-COHN/SELTZER

JANIS BLACKMON,

      Plaintiff,

vs.

WAL-MART STORES, EAST, L.P.,
d/b/a WAL-MART,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Wal-Mart Stores, East, L.P., d/b/a Wal-Mart's Motion for Summary Judgment [DEs 13,14,15]. The Court has considered the Motion, Plaintiff's Response [DEs 21, 23], Defendant's Reply [DE 24], oral argument heard on March 12, 2009, and is otherwise advised in the premises.

### I. BACKGROUND

On September 11, 2007, Plaintiff filed a Complaint alleging Sexual Harassment and Retaliation in violation of the Florida Civil Rights Act.[1] On June 23, 2008, Defendant, asserting diversity jurisdiction, removed the action to Federal Court and on January 16, 2009, filed a Motion for Summary Judgment as to both counts. This motion became ripe on February 23, 2009. Except as noted, the agreed upon facts are recited below.

_____

[1] Plaintiff originally asserted a cause of action for assault and battery against Manuel Pereiro ("Pereiro"), but Pereiro was dismissed without prejudice prior to removal. (Notice of Removal, DE 1, p. 7.)

1

On December 6, 2005, Plaintiff was hired by Wal-Mart as a cashier.  Prior to her employment at Wal-Mart, Plaintiff was a cashier for Burger King where Pereiro was her supervisor.  Pereiro terminated Plaintiff from employment at Burger King.[2]  In her employment application for Wal-Mart, Plaintiff failed to mention her prior termination or even list Burger King as a former employer.  When she began working for Wal-Mart, Pereiro was already employed there as a Customer Service Manager ("CSM").  As a CSM, Pereiro had no authority to discipline, hire or fire Plaintiff.  His role was to assist the cashiers at the front end by, among other things, ensuring that each register had sufficient cash.

Wal-Mart provided Plaintiff with a copy of its Associate Handbook.  This handbook details the company's employment policies including its Anti-Discrimination and Harassment Prevention Policy, Statement of Ethics, Open Door Policy, Attendance Policy and Coaching for Improvement Policy.  Plaintiff also received training regarding Wal-Mart's policies and procedures prior to beginning work as a cashier.  This training provided specific instruction regarding the company's Attendance Policy and Coaching for Improvement Policy.

Wal-Mart's Discrimination and Harassment Prevention Policy provides that Wal-Mart has zero tolerance for harassment or discrimination of any kind.  The policy forbids

---

[2]Plaintiff  testifies that while she was at Burger King, Pereiro asked her to have sex with him and if she didn't he was going to fire her. (Blackmon Deposition, DE 22-3, p. 21.)  Plaintiff states that she informed Anna, a manager at Burger King about the comments and Anna was going to do an investigation. (Id. at p. 21 - 23, 25.) When Plaintiff was fired from Burger King by Pereiro, Plaintiff did not complain to anyone. (Id. at 23 - 24.) Plaintiff avers that later Pereiro was fired from Burger King because of sexual harassment and Plaintiff was offered her job back. (Blackmon Deposition, DE 22-3, p. 26-27, 154 - 156.)

any kind of offensive physical contact or physical touching, whether or not the conduct rises to the level of actionable harassment.  The policy also makes clear that the company takes seriously any complaints of harassment or discrimination and provides several avenues for associates to complain of harassment. Assurances are given that there will be no retaliation for complaints of this kind.

Wal-Mart's Coaching for Improvement Policy has three levels. Level One is a Verbal Coaching to inform the associate that his or her behavior is not in line with Wal-Mart's expectations. Level Two is a Written Coaching, a more formal documentation of the Associate's continued performance below expectations.   Level Three is a Decision-Making Day Coaching and is the final opportunity for an associate to evaluate his or her behavior prior to termination.  The Decision-Day Coaching allows an associate to decide if he or she wants to remain with Wal-Mart and if so, to develop a plan of action as to how to achieve the required improvement.  Any coaching received within a twelve-month span of the Decision-Making Day Coaching subjects an associate to immediate termination.  Ms. Blackmon does not dispute that this is the disciplinary procedure, but argues that it is not equally enforced because assistant managers had discretion in determining whether they followed the progressive disciplinary process. (Statement of Disputed Facts, DE 21, p. 2, ¶ 10.)

Plaintiff ultimately advanced to a Decision-Making Day Coaching.  On January 8, 2006, she received a Verbal Coaching for leaving her register and speaking with another cashier.  On August 10, 2006, Plaintiff received a Written Coaching when she accepted a check from a customer without verifying the customer's identification. On August 19, 2006, Plaintiff received a Decision-Making Day Coaching for failing to ring

3

up the correct product for a customer paying with a Government assistance check.

Plaintiff does not dispute that she received these three warnings, however she does

dispute whether they were warranted. (Statement of Disputed Facts, DE 21, p. 3, ¶ 14.)

Wal-Mart's Attendance Policy allows three unapproved absences in a rolling six-

month period before being disciplined. The fourth unapproved absence and

subsequent absences warrant one level advancement under the Coaching for

Improvement Policy. Unapproved tardies and "leaving earlys" also warrant a coaching

after several occurrences. Every three tardies equal one absence. (Statement of

Disputed Facts, DE 21, p. 2, ¶ 9.) Plaintiff does not dispute that this is the policy. She

disputes that the policy is equally enforced. (Id.) Wal-Mart terminated Plaintiff on

September 17, 2006, for excessive absenteeism. Debra Cole, the assistant manager,

spoke to the store manager, Mitch Brick, and told him that Plaintiff was a good

employee and to give her another chance. (Blackmon Deposition, DE 22-3, p. 90 -

93.[3]) Plaintiff maintains that she has no independent recollection of the unexcused

absences or tardies but agrees that the documentation shows that she was absent in

the amount alleged by Defendant. (Statement of Disputed Facts, DE 21, p. 3, ¶ 15.)

Prior to July 19, 2006, there is some dispute concerning the interactions between

Plaintiff and Pereiro. Both parties agree that in the third week of Plaintiff's employment

at Wal-Mart, Pereiro made the statement "come on Janis, you are going to give in, you

are going to give in. Come on, I know you are going to give in." (Blackmon Deposition,

DE 22-3, p. 97.) Plaintiff stated that she did not know what he meant by this comment

---

[3] When referring to page numbers for depositions, the court uses the deposition
page numbers, not the page numbers assigned by CM/ECF when docketing.

and asked him. He responded, "You know what I mean by that." (Id. at 98.)  Plaintiff

then stated, "Man, you need to stop it.  You still with your old games." (Id.)  To which

Pereiro stated, "[b]abe I'm going to get what I want." (Id. at p. 98.)  Plaintiff attests that

she told a CSM[4] named Brenda about this incident.  (Id. at p. 100-102.) Brenda later

told Plaintiff that she had pulled Pereiro aside and he was going to leave Plaintiff alone.

(Id.)  Plaintiff maintains that in addition to this comment, on five to ten occasions,

Pereiro said "You know I want to screw you" or "You know you had me last night." (Id. at

134 - 139, 142-144.)  Ms. Blackmon states that she informed Debbie[5] about the

comments four or five times and Debbie later told her that she took care of it and talked

to Pereiro.  (Id.)

On July 19, 2006, Plaintiff alleges that Pereiro purposefully grabbed her breasts

with both hands while he reached around her to replenish her register with coins.  The

store greeter, Ed Nason, witnessed the incident.  Plaintiff verbally notified the Co-

Manager, Tim Welborn, immediately after the incident as he walked past her register.

Welborn instructed Plaintiff to draft a written complaint and assured her that it would

immediately be investigated.  Plaintiff was allowed to go home and take the rest of the

day off.  Plaintiff did draft a written complaint summarizing the incident.  As part of the

investigation, Welborn interviewed Plaintiff, Pereiro and Nason.  Pereiro denied the

incident and did not recall any physical touching.  He stated that he often nudged

---

[4] Plaintiff did not dispute that a CSM had no authority to discipline, hire or fire
Plaintiff.  (Statement of Disputed Facts, DE 21, p. 1, ¶ 4; Statement of Undisputed
Facts, DE 14, p. 2, ¶ 4.)

[5] It would appear that references to Debbie are references to Debra Cole, the
assistant manager.  (Blackmon Deposition, DE 22-3, p. 126.)

cashiers to get out of the way when he was replenishing registers with money. Pereiro also indicated that there had been animosity between him and Plaintiff when they worked at Burger King. The witness, Mr. Nason, confirmed that inappropriate touching had occurred. After the investigation was completed, on July 31, 2006, Pereiro was terminated for misconduct.

After termination, Pereiro returned to the store four times as a customer. The first time he returned, Plaintiff alleges that he pointed at her while he was purchasing items at a different register. (Blackmon Deposition, DE 22-3, p. 123.) In her deposition, Plaintiff first stated that she did not tell anyone about this incident, she later avers that she told Debbie and Debbie said, "Janis, he gone right now. Maybe he won't be coming back too soon." (Blackmon Deposition DE 22-3, p. 124,127-128.) About a week later Pereiro returned to the store and went into Plaintiff's register line to purchase items. Pereiro told Plaintiff, "You think I'm joking? Your ass is going to be fired too. Just like you got me fired, you are going to be fired. I'm going to make sure of it." (Id. at p. 124.) Plaintiff did not respond and left her register to speak with assistant manager Debra Cole. Plaintiff avers that Ms. Cole told her something was going to be done. (Id. at p. 126 - 128.) Ms. Cole states that she informed Plaintiff "that, you know, if he came back in to let me [Ms. Cole] know or to walk away from her register and I would, you know, have someone else take care of it." (Cole Deposition, DE 22-11, p.31.) The third time Pereiro returned to the store he did not speak to Plaintiff but came through her line and rolled his eyes. (Blackmon Deposition, DE 22-3, p. 130-131.) Plaintiff did not tell anyone about this incident. (Id.) The fourth time he came in Pereiro told Plaintiff "You still working here? Watch and see. This is going to be the last time I

6

is see [sic] your ass here.  You are going to get fired too." (Id. at p. 132.)  Plaintiff did

not complain to anyone concerning this fourth incident.  (Id. at 133.)

## II. ANALYSIS

The Court may grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c).  For example, if "the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, [then] there is 'no genuine issue for trial.'"

Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When making this determination, the court "must view all the evidence and all factual

inferences reasonably drawn from the evidence in the light most favorable to the

nonmoving party." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278,

1285 (11th Cir. 1997).

Additionally, "[w]here the non-moving party fails to prove an essential element of

its case for which it has the burden of proof at trial, summary judgment is warranted."

Navarro v. Broney Automotive Repairs, Inc., 533 F. Supp. 2d 1223, 1225 (S.D.Fla.

2008), aff'd 2008 WL  2315869 (11th Cir. 2008) (citing Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986)).  According to the plain language of  Fed. R. Civ. P. 56(e), "an

opposing party may not rely merely on allegations or denials in its own pleading; rather,

its response must--by affidavits or as otherwise provided in this rule--set out specific

facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).  Essentially, so long as

the non-moving party has had an ample opportunity to conduct discovery, it must come

forward with affirmative evidence to support its claim.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

## A. Sexual Harassment

The Florida Civil Rights Act ("FCRA") is patterned after Title VII and courts generally apply Title VII case law to discrimination claims brought under the FCRA.  See Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195, n.1 (11th Cir. 2004).  To establish sexual harassment Plaintiff must show that:

> (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) a basis for holding the employer liable exists.

Reeves v. C.H. Robinson Worldwide, Inc., 525 F.3d 1139, 1143 (11th Cir. 2008).  Only elements four and five appear to be contested.

Title VII does not serve as a "general civility code."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quotation and citation omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not constitute a hostile work environment.  Id. (quotation and citations omitted). Instead, this element is only satisfied "'[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult.'"  Reeves, 525 F.3d at 1145 (quoting Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993)).

8

There are both subjective and objective aspects of this analysis. The Court must consider whether the plaintiff subjectively perceived the harassment to be severe or pervasive. See Id. Then the Court must determine whether that perception is objectively reasonable. See Id. In doing so, the Court must view the totality of the circumstances and should not focus on acts in isolation. See Id. Relevant factors for consideration include "(1) the frequency of the [discriminatory] conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's job performance." Id. at 1145 - 1146; Harris, 510 U.S. at 23.

Assuming Plaintiff subjectively perceived the alleged harassment to be severe or pervasive, the Court finds that this perception was not objectively reasonable. As for the first Harris factor, frequency, Plaintiff was hired by Wal-Mart as a cashier on December 6, 2005 and, according to Plaintiff, over the following seven months there were at most 5- 10 comments of "You know I want to screw you" or "You has me last night." (Blackmon Deposition, DE 22-3, p. 136 - 139, 142-144.) Additionally, there were comments of "come on Janis, you are going to give in, you are going to give in. Come on, I know you are going to give in," "You know what I mean by that" and "[b]abe I'm going to get what I want." (Id. at p. 97 - 98.) On July 19, 2006, there was the reported incident of Pereiro grabbing Plaintiff's breast. Drawing all inferences in Plaintiff's favor, from December 2005 through July 2006 Plaintiff's attorney argued at the hearing on the Motion for Summary Judgment that there were nine comments of a suggestive nature and one incident of physical touching. Following Pereiro's termination there were four other incidents: (1) Pereiro pointed a finger at Plaintiff from another isle, (2) Plaintiff

9

rolled his eyes at Plaintiff, (3) Pereiro stated, "You think I'm joking?  Your ass is going to be fired too.  Just like you got me fired, you are going to be fired.  I'm going to make sure of it," and (4) Pereiro stated, "You still working here?  Watch and see. This is going to be the last time I is see [sic] your ass here.  You are going to get fired too." (Blackmon Deposition, DE 22-3, p. 123 - 128.)  Pereiro's conduct and comments directed at Plaintiff after he was fired from Wal-Mart were not based on gender or sex but instead dealt with Pereiro's displeasure at Plaintiff's continued employment at Wal-Mart.  As a whole, while the Court certainly does not condone this type of behavior, this behavior was not frequent accordingly, this factor weighs in favor of Defendant.

Severity is the second factor and the third factor is whether the conduct is physically threatening or humiliating.  The nine comments occurring over the course of approximately seven months were not particularly severe or physically threatening although they were boorish.  The Court finds that the alleged sexual remarks fall below the minimum level needed to establish that the comments are severe, physically threatening or humiliating. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 - 1247 (11th Cir. 1999) (collecting cases setting standards for a Title VII sexual harassment violation). The physical touching incident evidenced a possible escalation of Pereiro's conduct but Mr. Wellborn stated that on the surveillance video it looked like Plaintiff and Pereiro had been engaged in horseplay prior to the incident and although the video confirmed that Pereiro physically touched Ms. Blackmon, it was inconclusive whether he had done so purposefully.  (Declaration of Timothy Welborn, DE 16-4, p. 1.) Cf. Johnson v. Booker T. Washington Broadcasting Services, Inc., 234 F.3d 501, 509 (11th Cir. 2000) (conduct severe, physically threatening and humiliating when perpetrator

10

would give unwanted massages, stood close to Plaintiff so that his body parts touched her from behind, and pulled his pants tight to reveal the imprint of his private parts.) The comments occurring after Pereiro's termination although possibly intimidating, were not severe or humiliating and more importantly were not based on Plaintiff's gender or sex. See e.g. Mendoza, 195 F.3d at 1247-1248 ("As an initial matter, whether Page's conduct testified to by Mendoza includes the necessary sexual or other gender-related connotations to be actionable sex discrimination is questionable. See Brill v. Lante Corp., 119 F.3d 1266, 1274 (7th Cir.1997) (rejecting the plaintiff's attempt to buttress a hostile-environment claim with evidence of unpleasant, but non-sexual, conduct). . .") Overall, the Court cannot say that the nature of the harassment was objectively severe, physically threatening or humiliating.  Consequently, these factors mitigate in favor of the Defendant.

As for the fourth Harris factor, Plaintiff's first coaching occurred on January 8, 2006, during the time of Pereiro's alleged harassment.  (Id. at 61 - 65.)  The second coaching occurred on August 10, 2006, and Plaintiff's third coaching occurred on August 19, 2006. (Id. at 67, 70.)  These two final coachings occurred after Pereiro's termination from Wal-Mart but allegedly during the time when Pereiro was returning to Wal-Mart as a customer.  Plaintiff testifies that she was upset, couldn't focus and was looking over her shoulder when she received her coaching. (Blackmon Deposition, DE 22-2, p. 70, 77-79.)   An abusive work environment can "detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Harris, 510 U.S. at 22.  Construing the facts in a light most favorable to Plaintiff, this factor weighs in her favor.

11

Under the totality of the circumstances and construing the facts in the light most favorable to Plaintiff, there are no genuine issues of material fact.  Pereiro's conduct was not severe or pervasive enough to create a hostile working environment.

Even if the conduct of Pereiro were considered severe or pervasive, Summary Judgment is still appropriate because of the absence of employer liability.  Reeves, 525 F.3d at 1143.  The Eleventh Circuit Court of Appeals, when discussing the liability of the employer for conduct of supervisory employees looked at the Supreme Court's opinion in Faragher where the court concluded that "an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Walton v. Johnson & Johnson, Inc., 347 F.3d 1272, 1285 (11th Cir. 2003) quoting Faragher, 524 U.S. at 807.  The Court arrived at this conclusion after determining that " it makes sense to hold an employer vicariously liable for some tortious conduct of a supervisor made possible by abuse of his supervisory authority, and that the aided-by-agency-relation principle embodied in § 219(2)(d) of the Restatement provides an appropriate starting point for determining liability for supervisory harassment." Id. at 1284 quoting Faragher, 524 U.S. at 802.

At the hearing on Defendant's Motion for Summary Judgment, Plaintiff's attorney argued that Pereiro was a supervisor because Plaintiff reported to him and relied upon him.  She further argued that Blackmon perceived Pereiro to be her supervisor.  However, Plaintiff concedes for the purposes of this motion that Pereiro did not make the decision to terminate Ms. Blackmon.  (Response, DE 23, p. 6, fn 4.) Plaintiff also does not dispute that a CSM had no authority to discipline, hire or fire Plaintiff.

(Statement of Disputed Facts, DE 21, p. 1, ¶ 4; Statement of Undisputed Facts, DE 14, p. 2, ¶ 4.) Additionally, when Plaintiff spoke to Brenda, also a CSM, about Pereiro's conduct, Brenda urged Plaintiff to report the incident to management, clearly indicating that a CSM did not have authority to deal with grievances or employment decisions regarding cashiers. (Blackmon Deposition, DE 22-3, p. 101.) Furthermore,  Plaintiff's performance appraisal and coachings do not appear to incorporate any recommendations by a CSM and they were not conducted by a CSM  thus belying any belief that CSMs were supervisors of cashiers and involved in recommending promotion or reprimand.  (Blackmon Deposition, DE 22-2, p. 59 - 60, 63, 67-69, 75, 83-86, 90-94.) The most persuasive factor for finding Pereiro was not a supervisor is the Joint Pretrial Stipulation where the parties agree that "Plaintiff contends that she was sexually harassed by a co-worker on duty. . ." (Joint Pretrial Stipulation, DE 31, p. 1.); see also Feazell v. Tropical Products, Inc., 819 F.2d 1036, 1040 (11th Cir. 1987) ("[m]atters stipulated to in a pretrial order are binding on the parties unless modified and normally cannot be objected to on appeal.")

Based upon the evidence provided, Pereiro, as a CSM, did not have immediate (or successively higher) authority over Plaintiff.  He did not have the ability to influence employment related decisions concerning Plaintiff and did not direct Plaintiff's daily work activities.  Moreover, Pereiro's alleged harassment was not made possible by an abuse of his supervisory authority. As demonstrated by the evidence provided, Pereiro and CSMs in general were not held out as having supervisory authority over cashiers and taking the evidence in the light most favorable to the Plaintiff, and considering the totality of the circumstances, her belief that Pereiro was a supervisor was not

13

reasonable. Burlington Indus. v. Ellerth, 524 U.S. 742, 758 (1998) ("If, in the unusual

case, it is alleged there is a false impression that the actor was a supervisor, when he in

fact was not, the victim's mistaken conclusion must be a reasonable one. Restatement

§ 8, Comment c ('Apparent authority exists only to the extent it is reasonable for the

third person dealing with the agent to believe that the agent is authorized').")

Furthermore, Plaintiff agreed in the Joint Pretrial Stipulation that she was sexually

harassed by a co-worker on duty. (Joint Pretrial Stipulation, DE 31, p. 1.)  While

employed at Wal-Mart Pereiro was a CSM and in this role he assisted cashiers at the

front end.  (Blackmon Deposition, DE 22-2, p. 49 - 50.)  He was therefore a co-worker

of Plaintiff.

 Where sexual harassment is committed by a co-worker or customer, "plaintiff

must show that the employer either knew (actual notice) or should have known

(constructive notice) of the harassment and failed to take immediate appropriate

corrective action." Watson v.  Blue Circle, Inc., 324 F.3d 1252, 1259(11th Cir. 2003).

To establish actual notice plaintiff must provide proof that management knew of the

harassment.  Id. If the employer "has a clear and published policy that outlines the

procedures an employee must follow to report suspected harassment and the

complaining employee follows those procedures, actual notice is established." Id.  On

the other hand, constructive notice is found where harassment was so severe and

pervasive that management reasonably should have known of the conduct.  Id.

 The Court finds that Wal-Mart had a clear and published policy that outlined the

procedures Plaintiff should follow to report harassment. (Wal-Mart Policies and

Procedures, DE 22-4, p. 1 - 3). The policy explains that anyone experiencing prohibited

conduct should report the activity to a salaried member of management, the Regional Personnel Manager, the People Group or to call the Ethics hotline.  (Id. at p. 2.)

Plaintiff does not dispute that once she reported that Pereiro had touched her, Wal-Mart initiated an investigation and subsequently terminated him.  (Response, DE 23, p. 7.)  Instead, Plaintiff argues that Wal-Mart knew of the alleged comments prior to the July 19 event and after his termination, yet, failed to take adequate remedial action.

In the third week of Plaintiff's employment at Wal-Mart, Pereiro made the statement "come on Janis, you are going to give in, you are going to give in. Come on, I know you are going to give in," "You know what I mean" and then, "[b]abe I'm going to get what I want." (Blackmon Deposition, DE 22-3, p. 97- 98.)  Plaintiff maintains that she told a CSM[6] named Brenda about this incident and Brenda told Plaintiff that she had pulled Pereiro aside and he was going to leave her alone.  (Id. at p. 100-102.)  As a CSM, Brenda was not a salaried member of management and was therefore not an appropriate individual to report the incident to pursuant to Wal-Mart's policy. (Holligan Deposition, DE 22-12, p. 4 - 5; Wal-Mart Policies and Procedures, DE 22-4, p. 2.)  As a result, Plaintiff's actions in reporting the event to Brenda did not impute actual notice to Wal-Mart.  Breda v. Wolf Camera & Video, 222 F.3d 886, 889 - 890 (11th Cir. 2000). In fact, Brenda advised Plaintiff to tell someone in management but she failed to do so. (Blackmon Deposition, DE 22-3 p. 101.)  Even so, Plaintiff testified that Brenda spoke to Pereiro and for three weeks there were no further incidents.  (Id. at 102.)

---

[6] Plaintiff did not dispute that a CSM had no authority to discipline, hire or fire Plaintiff.  (Statement of Disputed Facts, DE 21, p. 1, ¶ 4; Statement of Undisputed Facts, DE 14, p. 2, ¶ 4.)

Plaintiff testified that on five to ten occasions Pereiro said "You know I want to screw you" or "You know you had me last night." (Id. at 136 - 139, 142-144.) Plaintiff states that she informed Ms. Cole, the assistant manager four or five times about these comments, and Ms. Cole told her she had taken care of it and spoken to Pereiro. (Id.) The Court notes that placing these comments in the time line of events and determining with any exactitude the number of times the comments were made or reported is difficult. (Id. at p. 97, 111-112, 134-136.)   Regardless, Plaintiff testified that Ms. Cole would make sure Plaintiff went to lunch and Ms. Cole would then speak with Pereiro. (Id. at p. 138 - 139.) There is no evidence to indicate that this was anything but appropriate remedial action.

Of the four incidents that occurred after Pereiro's termination, Plaintiff only reported, at most, two to Ms. Cole.  There is some discrepancy in Plaintiff's recollection of the first instance where Pereiro pointed at Plaintiff.  First she stated she didn't tell anyone, later she testifies that after he left she reported to Ms. Cole and Ms. Cole stated that since he was no longer in the building, maybe he would not return. (Blackmon Deposition, DE 22-3, p. 121-124, 126 - 128.)  When Plaintiff informed Ms. Cole about the second encounter, Ms. Cole informed Plaintiff that if he came back, to inform her or to simply walk away from her register.  (Cole Deposition, DE 22-11, p. 31.) At the hearing Plaintiff's counsel argued that Wal-Mart should have barred Pereiro from entering the store. As discussed above these incidents were not based on gender and those that were reported were appropriately handled, though not handled to Plaintiff's liking.   The Court concludes that when Wal-Mart had actual notice of the harassment it took immediate, appropriate corrective action.

Additionally, Plaintiff cannot rely on constructive notice to hold Defendant liable because Wal-Mart had in place an effectively disseminated written anti-harassment policy. <u>Minix v. Jeld-Men, Inc.</u>, 237 Fed. Appx. 578, 583 (11th Cir. June 27, 2007). This is not a situation where there is no policy or where the policy is ineffective or incomplete. <u>Id.</u> Here, Wal-Mart had in place an anti-harassment policy that was both comprehensive and vigorously enforced. Consequently, Plaintiff cannot establish liability against Wal-Mart on the basis of the company's constructive notice of Pereiro's conduct. Based on the foregoing, there are no genuine issues of material fact. There is no basis for holding Wal-Mart liable and Defendant is entitled to Summary Judgement on the claim of sexual harassment.

## B. <u>Retaliation</u>

To establish a prima facie case of retaliation, a plaintiff must show that, " (1) [s]he engaged in statutorily protected expression; (2)[s]he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. The challenged action must be materially adverse from the standpoint of a reasonable employee." <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d 955, 978 n.52 (11th Cir. 2008) (internal quotation and citation omitted). The phrase 'protected activity' includes formal EEOC complaints and informal complaints filed internally to the employee's supervisors. <u>Shannon v. Bellsouth Telecomms., Inc.</u>, 292 F.3d 712, 716 n.2 (11th Cir. 2002). Additionally, "the causal link element [is interpreted] broadly so that 'a plaintiff merely has to prove that the protected activity and the … [adverse] action are not completely unrelated.'" <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004) (citation omitted). A causal connection is established if the plaintiff shows

17

that the decision-maker was aware of the protected activity and the protected activity is not wholly unrelated to the adverse action. <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 590 (11th Cir. 2000). "For purposes of a prima facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" <u>Id.</u>

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse action. <u>Crawford v. City of Fairburn</u>, 482 F.3d 1305, 1308 (11th Cir. 2007). "If the employer articulates a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." <u>Id.</u>  Conclusory allegations, without more, are insufficient to show pretext. <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." <u>Chapman v. Al Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000). Additionally, mere knowledge of protected activity by a decision-maker can be sufficient to survive the prima facie case but, knowledge alone is not necessarily sufficient once the analysis moves to the pretext stage. <u>Knight v. Florida Department of Transportation</u>, 291 Fed. Appx. 955, 959 - 960 (11th Cir. 2008).

Assuming Plaintiff established a prima facie case of retaliation, Wal-Mart has

18

proposed a legitimate, non-discriminatory reason for Plaintiff's termination - her absenteeism after reaching a Decision-Day coaching.  It is therefore Plaintiff's burden to show that this reason is mere pretext for retaliation.

Plaintiff disagrees that her mistakes warranted the level of reprimand she received and argues that the disciplinary procedures were applied unevenly because supervisors had great discretion in utilizing the disciplinary scheme.  Plaintiff further argues that Wal-Mart does not terminate associates for poor attendance and points to other associates with wore attendance records.  (Response, DE 23, p. 13.)

Yet, Plaintiff does not dispute that she advanced to a Decision-Making Day Coaching, the final step before termination. (Statement of Disputed Facts, DE 21, p. 2, ¶ 10.)  Nor does she dispute that any coaching received within a twelve-month span of the Decision-Making Day Coaching subjects an associate to immediate termination. (Statement of Disputed Facts, DE 21, p. 2, ¶ 10.)   Plaintiff does not argue that she did not make the mistakes subject to the coaching and does not provide evidence to suggest that her recorded absences or tardiness were inaccurate. Plaintiff has not provided any evidence that Wal-Mart's reason for firing her was pretextual.

Plaintiff provides examples of individuals with poor attendance records but not individuals with similar coaching in addition to the type of attendance record Plaintiff had with Wal-Mart.   As Wal-Mart explained, it "does not terminate Associates for poor attendance.  Instead, Associates who continue to have poor attendance after progressing to a Decision-Making Day Coaching violate Wal-Mart's Coaching for Improvement Policy and are subject to termination, as was the case with Blackmon."

19

(EEOC Letter, DE 22-5.)[7]

There are no genuine issues of material fact. Plaintiff has not met the proffered reason for her termination head on and rebutted it. Chapman, 229 F.3d at 1030.  There is insufficient evidence to permit a reasonable factfinder to conclude that absenteeism after reaching a Decision-Day coaching was not the real reason for Plaintiff's termination and instead, she was terminated because she complained about Pereiro. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).   Where, as here, "the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether . . . the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, [our] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Goodman v. Georgia Southwestern,  147 Fed.Appx. 888, 891 (11th Cir. 2005) (internal quotations and citations omitted.)

### III. CONCLUSION

In light of the foregoing it is **ORDERED AND ADJUDGED** that Wal-Mart's Motion for Summary Judgment [DEs 13,14,15] is **GRANTED**.  The Court will enter a Final Judgment in accordance with this Order. The Clerk shall **CLOSE** this case and **DENY** all other motions as **MOOT**.

---

[7]Additionally, Ms. Cole was not involved in the investigation of Pereiro, and it was Ms. Cole who attempted to persuade the manager to allow Plaintiff to continue with her employment. (Blackmon Deposition, DE 22-3, p. 90 - 93; Cole Deposition, DE 22-11, p. 25.)

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida on this _16_ day of March, 2009.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All counsel of record on CM/ECF.

21